UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Delsita Yvette Day,

      Plaintiff,

v.                                                                    Civ. No. 04-4054 (JNE/SRN)
                                                                      ORDER
Department of Veterans Affairs
and R. James Nicholson, Secretary
of Veterans Affairs,

      Defendants.

---

Leanna V. Sartin, Esq., Sartin Law Office, appeared for Plaintiff Delsita Yvette Day.

Mary Jo Madigan, Esq., Assistant United States Attorney, Office of the United States Attorney for the District of Minnesota, appeared for Defendants Department of Veterans Affairs and R. James Nicholson, Secretary of Veterans Affairs.

---

Delsita Yvette Day brought this action against her former employer, the Department of Veterans Affairs (VA), and R. James Nicholson, the Secretary of Veterans Affairs, (collectively, Defendants) alleging claims under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C §§ 2000e to 2000e-17 (2000). Day asserts that Defendants discriminated against her based on her race, color, gender, national origin, and in retaliation for prior complaints of discrimination. Additionally, Day alleges that Defendants defamed her. The case is before the Court on Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.

## I.      BACKGROUND

The VA operates the Veterans Administration Medical Center (VAMC) in Minneapolis, Minnesota. Day, an African American female, was hired on a permanent basis as a medical clerk at the VAMC in May 1996. In September 1998, Day resigned from her position and

moved out of state.  Four years later, in February 2002, Day was rehired as a medical clerk by the VAMC.

As a result of lingering pain from a car accident in July 2002, Day claims that she had difficulties grooming her hair and clothing herself.  Consequently, she began twisting her hair into dreadlocks and wearing baggier clothes to work.  Day alleges that these fashion changes elicited disparaging remarks from her co-workers and supervisors.  Specifically, Day asserts that one of her supervisors, LuAnn Cecil, made gestures to Day simulating the smoking of marijuana.  In a separate incident, Day alleges that Cecil mentioned that she "wanted some of whatever [Day] was smoking" after seeing Day and a co-worker sharing jokes and laughing.

Following her return to the VAMC in 2002, Day was the subject of a series of disciplinary actions.  The VAMC has detailed policies and procedures regarding the discipline of its employees.  These policies and procedures include a range of discipline that may be given when particular offenses occur.  One such policy establishes that insolent or abusive language to an immediate supervisor may result in termination after the first offense.  On August 28, 2002, Day was issued a letter of counseling to address several policy infractions, including an unexcused absence from work, the inappropriate use of a clinician's time, conduct disrespectful to a supervisor, and the failure to follow established procedures.

On September 12, 2002, the VAMC issued Day a letter of proposed reprimand for the following reasons: (a) seven instances of absences from work without leave; (b) five instances of disrespectful conduct or behavior disruptive to the workplace; and (c) three instances of failure to follow procedures or supervisory instructions.  After examining the evidence supporting the proposed reprimand, including Day's written and oral responses, the VAMC issued Day a formal reprimand on October 18, 2002.

On August 27, 2003, Day was issued a letter of proposed suspension for fourteen days based on seven instances of disrespectful conduct and behavior disruptive to the workplace that occurred over a five-day period.  The VAMC later offered Day a reduced suspension of three days with the remaining eleven days held in abeyance if Day met certain conditions, including attending a Prevention and Management of Disruptive Behavior session, entering an anger management program, and waiving the right to any form of appeal related to any Equal Employment Opportunity (EEO) issue occurring prior to the date of the offer.  Day rejected the offer because she did not believe that she needed anger management assistance and because she did not wish to waive any EEO rights.

On October 23, 2003, the VAMC suspended Day for fourteen days.  While serving the suspension, Day raised an informal EEO complaint with the VA's Office of Resolution Management (ORM) on November 6, 2003, alleging that the VAMC discriminated against her on the basis of race.  Claiming that she had been subjected to harassment and a hostile work environment, Day sought reimbursement for the salary lost during the suspension.

On December 15, 2003, the VAMC issued Day a letter of proposed removal from employment based on the following events: (a) four instances of disrespectful conduct and behavior disruptive to the workplace; (b) two instances of failure to follow supervisory instructions; (c) one instance of failure to follow clinic procedures; and (d) two instances of unnecessary delay in assisting patients.  After consideration of the evidence supporting the proposed removal, including Day's written and oral responses, the VAMC Director terminated Day's employment effective January 23, 2004.

On December 22, 2003, Day filed a formal complaint of discrimination based on race, color, and reprisal with the ORM.  After conducting an investigation into the complaint, the

ORM submitted its investigative file to the VA's Office of Employment Discrimination Complaint Adjudication (OEDCA) on June 30, 2004. One month later, on July 30, 2004, the OEDCA issued a Final Agency Decision finding that Day failed to establish by a preponderance of the evidence that she was discriminated against based on her race or color, or in reprisal for prior protected activity.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.   Title VII claims

Title VII makes it an unlawful employment practice for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to discriminate against an employee "because [she] has opposed any practice made an unlawful employment practice by

this subchapter." *Id.* § 2000e-3(a). Day claims that Defendants discriminated against her based on her race, color, gender, national origin, and in retaliation for prior complaints of discrimination. The Court examines each claim in turn.

   *1.     Race and color claims*

   A plaintiff may establish a violation of Title VII's prohibition against race-based termination either through direct or indirect evidence. *Twymon v. Wells Fargo & Co.*, 2006 WL 2595961, at *6 (8th Cir. Sept. 12, 2006) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 278-79 (1989) (O'Connor, J., concurring)). Evidence is direct if it establishes a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision. *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003) (citing *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)). "'[D]irect evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998) (quoting *Price Waterhouse*, 490 U.S. at 277).

   In this case, Day attempts to establish direct evidence of discrimination through comments made by one of her supervisors. Day claims that one of her supervisors, LuAnn Cecil, made derogatory comments about her dreadlock hairstyle by insinuating that Day smokes marijuana. Specifically, Day alleges that Cecil, after seeing Day and a co-worker sharing jokes and laughing, stated that she wanted some of whatever Day was smoking. The Court concludes that Cecil's comments were unrelated to the decision to terminate Day.

   While it is unclear from the record whether Cecil could be considered a decisionmaker for purposes Day's termination, there is no contention that her comments were part of the

5

decisional process itself.  There is no mention of drug use or abuse in Day's reprimands, nor are drugs cited as a reason for Day's termination.  Cecil's observations, which Day attributes to her hairstyle, are nothing more than stray remarks in the workplace.  Even if made by a decisionmaker, "an isolated, stray comment unrelated to the decisional process" is not evidence of discrimination. *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 867-68 (8th Cir. 2003).  Accordingly, the Court concludes that Day failed to produce direct evidence of discrimination based on race or color.

In order to assess an employment discrimination claim based upon indirect evidence of racial discrimination, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  *See Twymon*, 2006 WL 2595961, at *7.  "Under this framework, a Title VII plaintiff has the initial burden of establishing a prima facie case of discrimination." *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 656 (8th Cir. 2003).  A plaintiff establishes a prima facie case by showing that: (1) she was a member of a protected class; (2) she was meeting the legitimate job expectations of her employer; (3) she experienced an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Philip v. Ford Motor Co.,* 413 F.3d 766, 768 (8th Cir. 2005).

Defendants concede that Day is a member of a protected class and that she experienced an adverse employment action, but deny that she either met the legitimate expectations of the VAMC or has shown that she was treated differently than similarly situated employees outside of her protected class.  The Court agrees.

Day was the subject of extensive, progressive discipline prior to her termination.  Day was issued a letter of counseling on August 28, 2002, to address numerous workplace policy

infractions, including unexcused absences and conduct disrespectful to her supervisors.  After continuing to break these rules, Day was formally reprimanded on October 12, 2002.  Nine months later, on August 27, 2003, Day was issued a proposed suspension of fourteen days.  Again, the proposed suspension cited Day for conduct disrespectful to her supervisors and for behavior disruptive to the workplace.  Specifically, Day was suspended for hostile, loud, disruptive, and abusive behavior toward her supervisors and co-workers.  Day was terminated effective January 23, 2004, based on similar infractions that occurred after the date of her proposed suspension.

It is undisputed that the VAMC identified deficiencies in Day's work performance, and that the VAMC communicated its findings to Day on a regular basis. Day was aware that she was not performing her duties in a way that met the VAMC's legitimate expectations. Accordingly, the Court concludes that Day fails to establish a prima facie case of discrimination because she was not meeting the legitimate expectations of her employer.  *See Erenberg v. Methodist Hosp.*, 357 F.3d 787, 793 (8th Cir. 2004) (Holding summary judgment proper where plaintiff "failed to show that she was qualified for the position from which she was discharged.").

Additionally, the Court notes that Day failed to show that similarly situated employees outside her protected class were treated differently.  Day claims that two Caucasian co-workers, Shelley Williamson and Jonathan Coleman, were allowed to set their own breaks, unlike Day.  Day also complains generally that her Caucasian co-workers were not disciplined as severely as her.  Day fails, however, to establish that Williamson and Coleman were similarly situated in all relevant respects to Day.  "The individuals used as comparators 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without

any mitigating or distinguishing circumstances.'" *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)).  Significantly, Day fails to show that Williamson or Coleman had similar mitigating circumstances, namely a comparable disciplinary history.  Moreover, Day has failed to show that Williamson and Coleman held the same position and had the same responsibilities as Day.  Day's amended complaint identifies Williamson and Coleman as "probationary employees."  Day, on the other hand, was hired on a permanent basis.

Even if Day could successfully establish a prima facie case of racial discrimination, Day's complaint could not survive summary judgment.  When a prima facie case is established, the "burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for firing the plaintiff."  *Johnson v. Ready Mixed Concrete Co.,* 424 F.3d 806, 810 (8th Cir. 2005).  If the employer makes such a showing, the burden again shifts and plaintiff must demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515-16, (1993).

In this case, Defendants have articulated several legitimate, non-discriminatory reasons for Day's termination, including insubordination and multiple violations of established company policy.  *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) ("Insubordination and violation of company policy are legitimate reasons for termination.").  To prove pretext, Day must both discredit Defendants' asserted reasons for termination and show that circumstances permit drawing the reasonable inference that the real reason for terminating Day was her race or color.  *See Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).  Because Day has

presented no evidence debunking Defendants' rationale for termination, the Court concludes that Day has not met this burden.

Day also failed to provide evidence capable of supporting an inference that her termination was racially motivated. Such an inference is often drawn from the disparate treatment of similarly situated employees. *See Putman*, 348 F.3d at 376. As discussed above, however, Day failed to show that similarly situated employees outside her protected class were treated more favorably.

Day also asserts a claim of racial harassment and a hostile work environment under Title VII. To establish a hostile work environment claim, the plaintiff must establish that: (1) she is a member of a protected class; (2) she was exposed to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing behavior, but failed to take proper action to alleviate it. *See Al-Zubaidy v. TEK Indus.*, *Inc.,* 406 F.3d 1030, 1038 (8th Cir. 2005).

To alter the terms and conditions of one's employment, conduct must be severe and pervasive, both objectively and subjectively. *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005). When determining whether a work environment is hostile or abusive, a court examines all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Al-Zubaidy,* 406 F.3d at 1038. Harassment standards are demanding. *Id.* Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Id.* at 1039.

In this case, Day asserts that the disparaging remarks made regarding her hairstyle created a hostile work environment.  Day has not presented evidence that those remarks were sufficiently severe or pervasive to alter the terms or conditions of her employment. *See Singletary*, 423 F.3d 893 ("We have held that racial slurs alone do not render a work environment hostile as a matter of law.").  Accordingly, the Court grants Defendants' motion for summary judgment on Day's race and color claims.

2.      *Gender and national origin claims*

In her complaints to the ORM, Day alleged discrimination based on the protected categories of race, color and reprisal.  Defendants argue that Day's claims based on gender and national origin are ripe for summary judgment because they were raised for the first time in this proceeding.  The Court agrees.

"Allegations outside the scope of the EEOC charge . . . circumscribe the EEOC's investigatory and conciliatory role and for that reason are not allowed." *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) (citations omitted).  Although some flexibility is permitted when the plaintiff is *pro se*, as was Day when this proceeding commenced, "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." *Id.* (quoting *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996)).

In this case, not only did Day fail to raise any claim based on gender or national origin in her formal complaint to the ORM, she still has not produced any evidence nor presented any argument that she was discriminated against based on these categories.  Accordingly, the Court grants Defendants' motion for summary judgment on Day's gender and national origin claims.

*3.      Retaliation claim*

Day also asserts that she was discriminated against for her prior complaints of discrimination to the ORM.  Day made an informal complaint to the ORM on November 6, 2003, objecting to her 14-day suspension.  Then, on December 22, 2003, Day brought a formal complaint of discrimination to the ORM.

Where, as here, no direct evidence of discriminatory retaliation is asserted, the *McDonnell Douglas* analysis applies.  *See Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005).  "To establish a prima facie case of retaliatory discrimination, a plaintiff must show: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action."  *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713-14 (8th Cir. 2000).  If the plaintiff successfully puts forth a prima facie case, the employer may rebut the resulting presumption of discrimination by articulating a legitimate, non-retaliatory reason for the adverse employment action.  *See Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1078 (8th Cir. 2005).  If the employer successfully presents a race-neutral rationale, then the plaintiff may attempt to refute the asserted reason as mere pretext.  *Id.*

Defendants do not dispute that Day engaged in activity protected by Title VII, or that an adverse employment action occurred, but deny that any causal connection existed.  Day responds that there exists a temporal proximity between the submission of her informal complaint to the ORM and the decision to terminate her employment.  Day's informal complaint to the ORM of November 6, 2003, was made 39 days before the VAMC letter of proposed termination, dated December 15, 2003.  Day's formal complaint of discrimination was filed with the ORM on December 22, 2003, 25 days before she was terminated on January 16, 2004.

11

An inference of causal connection may sometimes be drawn from the timing of the events, but "temporal proximity alone is generally insufficient to prove pretext." *Arraleh v. County of Ramsey*, 2006 WL 2561240, at *7 (8th Cir. Sept. 7, 2006).  The record reveals that Day was not meeting Defendants' performance expectations and was disciplined accordingly on several occasions prior to her complaints to the ORM in 2003.  This evidence undermines Day's attempt demonstrate a causal connection.  *See id.*; *Kasper*, 425 F.3d at 503; Erenberg, 357 F.3d at 793.  Accordingly, Day has failed to demonstrate the causal connection between her protected conduct and an adverse employment action necessary for a prima facie case of discriminatory retaliation.  The Court grants Defendants' motion for summary judgment on Day's retaliation claims.

**B.      Defamation claims**

Day also asserts the common law torts of libel and slander against the VA.  Defendants argue that these claims should be dismissed because the Federal Tort Claims Act (FTCA) does not waive sovereign immunity for these torts.  *See* 28 U.S.C. § 2680(h) (2000).  The Court agrees.  "[A] defamation claim must be dismissed because the FTCA does not waive sovereign immunity for such claims."  *McAdams v. Reno*, 64 F.3d 1137, 1144 (8th Cir. 1995).  Accordingly, the Court grants Defendants' motion for summary judgment on Day's defamation claims.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    Defendants' Motion for Summary Judgment [Docket No. 22] is
      GRANTED.

2.    Day's Amended Complaint [Docket No. 18] is DISMISSED WITH
      PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September 18, 2006

> s/  Joan N. Ericksen
> JOAN N. ERICKSEN
> United States District Judge